FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2013 FEB 14   PM 3: 03

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES OF AMERICA        :

v.                               :        CASE NO. 2: 13cr-21 -FtM- 99SPC

GREGORY WAYNE EAGLE             :

## PLEA AGREEMENT

A.   **Particularized Terms**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, and the defendant, Gregory Wayne Eagle, and the attorney for the defendant, Wilbur Charles Smith, III, mutually agree as follows:

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One through Six of the Information.  Counts One through Four charge the defendant with Bank Fraud, in violation of Title 18, United States Code, Section 1344.  Count Five charges the defendant with Mail Fraud, in violation of Title 18, United States Code, Section 1341. Count Six charges the defendant with Wire Fraud, in violation of Title 18, United States Code, Section 1343.

2.    Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

Defendant's Initials _____

3.    Maximum Penalties

Counts One through Six are each punishable by a maximum term of imprisonment of 30 years, without parole, a fine of not more than the greater of $1,000,000 or twice the gross gain or twice the gross loss, a term of supervised release of not more than 5 years, and a special assessment of $100.00, said special assessments to be due on the date of sentencing.

4.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One through Four are:

(1)    the defendant carried out or attempted to carry out a scheme to defraud a financial institution or to get money, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;

(2)    the false or fraudulent pretenses, representations, or promises were material;

(3)    the defendant intended to defraud the financial institution; and

(4)    the financial institution was federally insured.

The elements of Count Five are:

(1)    the defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false or fraudulent pretenses, representations, or promises;

(2)    the false or fraudulent pretenses, representations, or promises were about a material fact;

(3)    the defendant intended to defraud someone; and

(4)    the defendant used the United States Postal Service by

Defendant's Initials                     2

mailing or by causing to be mailed something meant to help carry out the scheme to defraud.

The elements of Count Six are:

(1)　the defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

(2)　the false pretenses, representations, or promises were about a material fact;

(3)　the defendant acted with the intent to defraud; and

(4)　the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

5.　<u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.　<u>Mandatory Restitution to Victims of Offenses of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full restitution to First National Bank of Pennsylvania and the beneficiaries of the Pine Island 101 Land Trust.

7.　<u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level

Defendant's Initials _____          3

downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).
The defendant understands that this recommendation or request is not binding on the
Court, and if not accepted by the Court, the defendant will not be allowed to withdraw
from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to
operation of subsection (a) is level 16 or greater, and if the defendant complies with the
provisions of USSG §3E1.1(b), the United States agrees to make a motion pursuant to
USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant
understands that the determination as to whether the defendant has qualified for a
downward adjustment of a third level for acceptance of responsibility rests solely with
the United States Attorney for the Middle District of Florida, and the defendant agrees
that the defendant cannot and will not challenge that determination, whether by appeal,
collateral attack, or otherwise.

8.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will
recommend to the Court that the defendant be sentenced within the defendant's
applicable guidelines range as determined by the Court pursuant to the United States
Sentencing Guidelines.  The parties understand that such a recommendation is not
binding on the Court and that, if it is not accepted by this Court, neither the United
States nor the defendant will be allowed to withdraw from the plea agreement, and the
defendant will not be allowed to withdraw from the plea of guilty.

9.    Low End

At the time of sentencing, and in the event that no adverse information is

received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10.     Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the

Defendant's Initials _9_____                    5

United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

11.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12.   Cooperation - Responsibilities of Parties

a.     The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or

Defendant's Initials                 6

should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(3)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(4)    The defendant will not be permitted to withdraw the guilty plea to the counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to the counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

13.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture,

Defendant's Initials _____                    7

pursuant to Title 18, United States Code, Section 981(a)(1)(C), Section 982(a )(2)(A); and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offenses to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to

Defendant's Initials _CҖ_                              8

effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials _CJ_                          9

B.    **Standard Terms and Conditions**

      1.    Restitution, Special Assessment and Fine

          The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

      2.    Supervised Release

          The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

      3.    Sentencing Information

          The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the

Defendant's Initials _*9ℓ*_                10

counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition.  The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4       Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the

Defendant's Initials _____                    11

attorney or other agents for the government regarding any recommendations by the

government are not binding on the Court and that, should any recommendations be

rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this

plea agreement.  The government expressly reserves the right to support and defend

any decision that the Court may make with regard to the defendant's sentence, whether

or not such decision is consistent with the government's recommendations contained

herein.

     5.     <u>Defendant's Waiver of Right to Appeal the Sentence</u>

     The defendant agrees that this Court has jurisdiction and authority to

impose any sentence up to the statutory maximum and expressly waives the right to

appeal defendant's sentence on any ground, including the ground that the Court erred

in determining the applicable guidelines range pursuant to the United States

Sentencing Guidelines, except (a) the ground that the sentence exceeds the

defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the

United States Sentencing Guidelines; (b) the ground that the sentence exceeds the

statutory maximum penalty; or (c) the ground that the sentence violates the Eighth

Amendment to the Constitution; provided, however, that if the government exercises its

right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the

defendant is released from his waiver and may appeal the sentence as authorized by

18 U.S.C. § 3742(a).

     6.     <u>Middle District of Florida Agreement</u>

     It is further understood that this agreement is limited to the Office of the

United States Attorney for the Middle District of Florida and cannot bind other federal,

Defendant's Initials _____          12

state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel. The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the

Defendant's Initials _9l_                              13

Court may ask defendant questions about the offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel, defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

FACTS

At all times material to the Information, defendant Gregory Wayne Eagle owned, controlled and was president and director of Eagle Realty of Southwest Florida, Inc. On June 12, 1990, Eagle created a Trust Agreement for the Pine Island 101 Land Trust.  The Trust Agreement listed 52 named combined beneficiaries of the Trust, and Eagle as the trustee.  Eagle Realty of Southwest Florida, Inc., was listed as one of the beneficiaries, holding a 3.5% interest in the Trust.  The Trust property consisted of approximately 101 acres of unimproved land bordering, in part, on Pine Island Road, located in Cape Coral, in the Middle District of Florida.  Eagle remained sole trustee of the Land Trust during all times charged in the Information.

The Trust Agreement granted certain specified rights to the beneficiaries in

Defendant's Initials _GE_                14

return for consideration.  In exchange for the consideration, each beneficiary received a percentage interest in the Trust.  The beneficiaries agreed to obligate themselves for expenses associated with the Pine Island 101 Land Trust, to include taxes, insurance, and other maintenance fees associated with the Trust Property.

The Trust Agreement provided that the beneficiaries had full and exclusive control over the management and operation of the Trust property, control of the selling, renting and other handling and disposition of the Trust property, and that they had the right to direct the trustee to convey or otherwise deal with the title to the Trust property. The Trust Agreement also gave the beneficiaries the right to receive the proceeds from the rental, sale, mortgage or other disposition of the property.  Under the terms of the Trust Agreement, trustee Eagle was only permitted to mortgage, pledge, or otherwise encumber the Trust property when and as directed by the beneficiaries of the Trust.

From 2002 through June 2008, Eagle, individually, and as trustee of the Pine Island 101 Land Trust, devised and executed a scheme and artifice to defraud and obtain money from financial institutions, and to defraud beneficiaries of the Land Trust and obtain money by means of by means of materially false and fraudulent pretenses, representations and promises.

Defendant Eagle obtained mortgage loans from Florida Community Bank on or about February 14, 2002, in the amount of $2,000,000.00, and from First National Bank of Pennsylvania on or about June 30, 2006, in the amount of $17,030,000.00.  At the time of the loans, both banks were financial institution with deposits insured by the Federal Deposit Insurance Corporation.  As trustee of the Pine Island 101 Land Trust, Eagle represented to these banks that he or an entity he controlled was the only

Defendant's Initials _____                    15

beneficiary of the Trust and that he had complete and unfettered control over the Trust property. He concealed from these banks the number and names of the other beneficiaries of the Trust.

On February 14, 2002, Gregory W. Eagle obligated himself and the Pine Island 101 Land Trust in the amount of $2,000,000 by obtaining a mortgage from Florida Community Bank. Defendant Eagle signed an affidavit in conjunction with this loan in which he falsely claimed that he had full power and authority to mortgage the Trust property and that all the beneficiaries consented to the granting of the mortgage and had authorized the defendant to execute the mortgage and all other documents requested by Florida Community Bank to complete the loan transaction. He attached to the affidavit a false and fraudulent excerpt from the Trust Agreement which stated that "Gregory W. Eagle" was the beneficiary of the Trust. Beneficiaries of the Trust were not aware that Eagle had mortgaged the Trust property, and had not given their authorization to Eagle, as trustee, to mortgage the property. Under these same false pretenses, Eagle received an extension of the mortgage loan from Florida Community Bank on June 29, 2005.

On June 30, 2006, defendant Eagle, individually and as trustee of the Pine Island 101 Land Trust received a mortgage loan from First National Bank of Pennsylvania in the amount of $17,030,000.00. In order to induce First National Bank of Pennsylvania to make the loan, defendant Eagle executed a Borrower's Closing Affidavit in which he falsely claimed that as owner of the Trust property he was in sole and undisputed possession of the property, and that there were no claims or other matters affecting the Trust property. The defendant also executed a Trustee's Affidavit

Defendant's Initials _GE_                    16

in which he falsely claimed that he had obtained the consent and approval from all beneficiaries under the Trust and had been authorized to execute any and all documents, including, but not limited to a mortgage in favor of First National Bank of Pennsylvania in the amount of $17,030,000.00.   He also signed a No Lien, Possession and Gap Affidavit in which he falsely claimed that as owner of the Trust property, no other person was in possession of the property or had a claim to possession of the property, and that he had obtained from all beneficiaries under the Trust the consent and approval to execute a mortgage in favor of First National Bank of Pennsylvania in the amount of $17,030,000.00.  The defendant further submitted to the bank an altered false and fictitious Trust Agreement for the Pine Island 101 Land Trust which named Gregory W. Eagle, P.A., as the sole beneficiary of the Trust.

On June 30, 2008, the defendant Eagle obtained a renewal of the original promissory note for the loan of $17,030,000.00 from First National Bank of Pennsylvania.  To induce the bank to renew the loan, the defendant falsely attested in a Trustee's Affidavit that the Pine Island 101 Land Trust Agreement attached to the Affidavit as Exhibit A was a "true, correct, and complete copy of the Land Trust Agreement," and that the Land Trust Agreement had "not been amended, terminated or revoked."  In fact, Eagle had altered the Trust Agreement by deleting the names of all beneficiaries to the Trust and inserting "Gregory W. Eagle, P.A." as the sole beneficiary. The defendant submitted to the bank this false and fictitious Trust Agreement in order to induce the bank to renew the $17,030,000.00 mortgage loan.

The defendant also submitted as Exhibit C to the aforementioned Trustee's Affidavit, a Resolution of Beneficiary of the Pine Island 101 Land Trust and Direction to

Defendant's Initials _*GE*_                              17

Trustee, in which the defendant falsely represented that he was the sole beneficiary of the Pine Island 101 Land Trust, that he held a 100% in the Land Trust, and that he had the necessary voting interest to direct the trustee to execute the Renewal Note, Mortgage Modification, and all other security instruments and loan documents to renew the loan as required by First National Bank of Pennsylvania.

The defendant further swore and subscribe to a Mortgagers'/Borrowers' Affidavit in which he falsely stated that the mortgagers had been in exclusive and undisputed possession of the Trust property since the time of vesting of title to the property in them; that there were no parties who had any interest or right to claim an interest in the Trust property; that there was no other person or entity in possession or who had any possessory right in the Trust property; and that there were no facts known to the defendant which could give rise to a claim being asserted against the Trust property.

Without the knowledge of all of the true beneficiaries of the Trust, defendant Eagle directly or indirectly profited as a result of these materially false and fraudulent pretenses, representations, and promises. He used load proceeds, in part, to fund other projects he controlled, thereby defrauding both the banks as well as the beneficiaries of the Pine Island 101 Land Trust. While Eagle paid off the $2,000,000 Florida Community Bank mortgage loan with proceeds of the First National Bank of Pennsylvania mortgage loan of $17,030,000.00, Eagle defaulted on the First National Bank of Pennsylvania mortgage loan, causing the bank to initiate foreclosure proceedings in October 2009. The unpaid principal balance is $17,030,000.00. The beneficiaries to the Land Trust have not received compensation for their initial payments as interest holders, yearly mortgage, tax, insurance, and administrative

Defendant's Initials _9C_                    18

payments, nor for the increase in the value of the Trust property from the time the Trust was created in June 1990.

In carrying out the scheme to defraud and obtain money, on November 16, 2007, the defendant caused a letter to be sent by the U.S. Mail from Eagle Realty of Southwest Florida, Inc., to Irvin Pest Control Profit Sharing Plan requesting $1,666.69 in administration fee, storm water charge, and real estate taxes. On December 15, 2009, the defendant caused a letter to be sent by the U.S. Mail from Eagle Realty of Southwest Florida, Inc., to "Pine Island Road 101 Acre Investors." In the letter, defendant Eagle stated that he was hopeful of a turn around from the last four years of bad economic times, that there were plans for the widening of Pine Island Road to four lanes, and that Walmart was starting construction the following year across the street from the site. Defendant Eagle failed to notify investors that First National Bank of Pennsylvania had filed a foreclosure action in October of 2009.

Also in carrying out the scheme, defendant Eagle caused a wire transfer from Florida to Pennsylvania $100,000.00 from an account of Bolanos Truxton, P.A., number 2090001809179, at Wachovia Bank, to escrow account number 500005616 at First National Bank of Pennsylvania. This payment was for an interest reserve deposit due by Eagle to the First National Bank of Pennsylvania in order to renew the mortgage loan of $17,030,000.00.

10. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the

Defendant's Initials _GL_                    19

defendant or defendant's attorney with regard to such guilty plea.

11.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 24th day of JANUARY, 2013.

ROBERT E. O'NEILL
United States Attorney

_____
GREGORY WAYNE EAGLE
Defendant

By: _____
JEFFREY F. MICHELLAND
Assistant United States Attorney

_____
WILBUR CHARLES SMITH, III
Attorney for Defendant

By: _____
DAVID G. LAZARUS
Assistant United States Attorney

By: _____
NICOLE H. WAID
Assistant United States Attorney
Chief, Fort Myers Division

20