# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                            **Case No. 2:13-cr-21-FtM-29SPC**

GREGORY WAYNE EAGLE,

        Defendant,

_____/

## MEMORANDUM OF LAW WITH ATTACHMENT

COMES NOW, the Defendant, Gregory Eagle by and through his attorney, Wilbur C. Smith III and files this his Sentencing Memorandum with Attachment.

This Memorandum consist of an excerpt from the bank lending documents provided the Defendant from the Government. The Attachment provides a summary of the transaction in question.

I HEREBY CERTIFY that on the 5th day of November, 2013 the foregoing has been electronically filed utilizing the CM/ECF system with the Clerk of the District Court who will electronically transmit to the following:

Jeffrey Michelland at Jeffrey.Michelland@usdoj.gov, Janet_Zuk@flmp.uscourts.gov FTMDocket.Mailbox@usdoj.gov

/s/ Wilbur C. Smith III
Wilbur C. Smith III
Florida Bar No. 129584
The Wilbur Smith Law Firm
1415 Hendry Street
Fort Myers, FL 33901
239-334-7696 (phone)
239-334-3669 (facsimile)
wcsmith@wilburlaw.com **(email)**

Borrower's Legal Name:    Gregory W. Eagle, Personally
Borrower's Address:       3818 Del Prado Blvd.

| | | | | |
|---|---|---|---|---|
| Date: | | | 06/05/06 | |
| Lender: | | | Mike Kozak | |
| Officer # / Region #: | | | 1479 / 3290 | |
| Borrower's Tin #: | | | ▓▓▓▓▓▓ | |

Legal Entity:             Individual
Nature of Bus/NAICS:      Land Development / 236110
Parent/Affiliation:       N/A
Subject to Reg O:         Yes ☐   No ☑
Customer Since:           New
New Customer:             Yes ☑   No ☐
  (If yes, OFAC check
  completed):             Yes ☑   No ☐
Shared National Credit:   Yes ☐   No ☑

Gross Annual Income:          $16,613    M
Credit Analyst:               Michelle Sims
Total Existing Exposure:      $0         M
Total Proposed Exposure:      $20,000    M
Total Proposed Exposure
for Ind/Dual Lending
Authority Purposes:           $0         M

---

- Covenants                    Test Required   Frequency (M,Q,A)           Compliance              Comments
  1) Maximum loan amount will be 65% LTV.
  2) Verification of interest reserve on the Borrower's proposed land loan (with another financial institution) on the 6,300 +/- acre
  property in Charlotte County.

- Prepayment Fee          Yes _____   No ___X___          _____ %

| | | | | | |
|---|---|---|---|---|---|
| - Annual Financials (B/G) | Audit _____ | Review _____ | Compile _____ | Unaudited _____ | PFS **B**   TR **B** |
| - Interim Financials (B/G) | Quarterly _____ | | Monthly _____ | | |
| - A/Rec Agings | Quarterly _____ | | Monthly _____ | Other _____ | |
| - A/Pay Agings | Quarterly _____ | | Monthly _____ | Other _____ | |

- Exceptions to Policy/Guidelines or Compliance Tracking:
  Exception/Compliance #   14    Exception/Compliance Description  Term on land loan exceeds 12 months
  Exception/Compliance # _____ Exception/Compliance Description _____
  Exception/Compliance # _____ Exception/Compliance Description _____
  Exception/Compliance # _____ Exception/Compliance Description _____
  Exception/Compliance # _____ Exception/Compliance Description _____

- Banking Relationship:   None
  - Checking:      Current _____   Avg 2Mo _____   Avg YTD _____   Avg 2Yr _____
  - Overdrafts:           Last Year _____            Current YTD _____
  - Delinquency:          x 30 Days _____   x 60 Days _____   x 90 Days _____
  - Other Banking Relationships: _____

- Proposed Loan Risk Rating:          4
- Additional Conditions (For Approvers Use Only):          Expiration Date: _____06/30/07_____

---

| Action Taken: | | ✓Senior Loan Committee | ✓Board Loan Committee | Board of Directors |
|---|---|---|---|---|
| Approval | X | | | |
| Decline | _____ | | | |
| Cancel | _____ | ∅ 6-14-06 | PS 6-22-06 | |
| Table | _____ | Initial & Date | Initial & Date | Initial & Date |

MiKe Kozak (via email)    6-14-06
(Originating Officer-Name/Signature)        Date              (Dual III-Sr Lending Officer or President-Name/Signature)   Date

_____            _____
(Approving Officer/First Signer-Name/Signature)   Date       (Dual III-Chief Credit Officer or Designee-Name/Signature)   Date

_____
(Dual Signature-Second Signer-Name/Signature)     Date

2

# EXPOSURE SUMMARY REPORT

**BORROWER:** Greg Eagle
**DATE PREPARED:** June 5, 2006

## A. Subject to Lending Limit

| Borrower Account# | FNB Ent | Loan Type | Orig Date | Original Purpose | Interest Rate | Total Commit Amount | Unsecured Commit Amount | Current Balance | Payment Amount | Collateral Type | Mat Date | Loan Risk Rtg | LRR Exp Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Proposed Loan | | Acquisition | 06/06 | Refi/Land Acq. | P + 1.00% | $20,000,000 | $0 | $0 | $0 I/O | FREM on 2 Parcels | 06/08 | 4 | |

Total Exposure Subject to Lending Limit: ############ $20,000,000 $0 $0

Exempt Loans

## B. Not Subject to Lending Limit

| Borrower Account# | FNB Ent | Loan Type | Orig Date | Original Purpose | Interest Rate | Total Commit Amount | Unsecured Commit Amount | Current Balance | Payment Amount | Collateral Type | Mat Date | Loan Risk Rtg | LRR Exp Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | $0 | $0 | $0 | $0 | | | | |

Total Exposure Not Subject to Lending Limit: $0 $0 $0

## C. Aggregate Exposure Calculation

Total Existing Aggregate Exposure: $0

Plus: New/Refinanced Loans $20,000,000
Less: Refinanced Loan #

Total Proposed Aggregate Exposure: $20,000,000

*For Lending Authority Purposes:*

Less: Exempt Loans $0

Total Proposed Aggregate Exposure for Individual/Dual Lending Auth Purpose: $0

ACH Exposure Limit: $              Credit Origination $              Debit Origination $
(If Applicable)

_Mike Kozak (via email) 6/8/06_
Account Officer Signature

3

## FNBPA Loan Compliance Sheet

**Lender Name:**   Mike Kozak

**Resp. Code:**

**Date Prepared:**   6/7/06

**Credit Amount:**   $20,000,000

| | | | |
|---|---|---|---|
| 802 / 101 | Is the borrower located in the Bank's trade area? | ☒ Yes | ☐ No |
| 102 / 102 | Does the loan exceed my lending authority? Check "no" if the loan is within your lending authority. | ☒ Yes | ☐ No |
| 103 / 103 | Spot Authority was **not** used. (check "no" if Spot Authority was used) | ☒ Yes | ☐ No |
| 400 / 104 | Intentional Exception was **not** used. (check "no" if Intentional Exception was used) | ☒ Yes | ☐ No |
| 500 / 105 | Does the credit have at least two distinct sources of repayment? | ☒ Yes | ☐ No |
| 406 / 106 | Is the loan secured? | ☒ Yes | ☐ No |
| 407 / 107 | If the loan is secured, has the value of the collateral been verified and is there the ability to perfect the security? Check N/A for unsecured loans. | ☐ N/A ☒ Yes | ☐ No |
| 406 / 108 | Does the loan transaction include the guarantee of the principle business owners, as defined? Check N/A for loans to Sole Proprietors or Individuals. | ☒ N/A ☐ Yes | ☐ No |

16

FNB0787

| 407 | 407 | Is the loan secured by desirable collateral? (I.e. not undesirable collateral as defined in the Credit Policy Manual, Section 407) Check N/A for unsecured loans. | ☐ N/A  ☒ Yes  ☐ No |
| --- | --- | --- | --- |
| 408 | 408 | Does the valuation of collateral (LTV) comply with policy guidelines as described in Section 408 of the Credit Policy Manual? Check N/A for unsecured loans. | ☐ N/A  ☒ Yes  ☐ No |

- Accounts Receivable – 60% of eligible assets
  - General Inventory – 50% - 60%
    - Raw Materials – 50%
    - Work in Process – 0%
    - Finished Goods – 70%-80%
  - Floor Plan Inventory
    - New Vehicles – 90% - 100% of invoice
    - Factory Official Vehicles – 90% of invoice
    - Used Vehicles – 90% of NADA wholesale value
  - Furniture, Fixtures and Equipment – 50% - 80%
  - Specific Equipment (including titled vehicles) – 80%
  - Real Estate Loans – 65% - 90%
    - Residential – 80% - 90%
    - Improved Commercial – 80%
    - SBA Improved Commercial – 90%
    - Land Development – 75%
    - Raw Land – 65%
  - Marketable Collateral – 50% - 100%
    - Listed Stocks – 70%
    - Listed Corporate Bonds – 80%
    - Marketable Municipal Bonds – 80%
    - FNB CDs – 100%
    - FNB Savings/Time Deposits – 90%
  - Acceptable Mutual Funds and Trust Accounts – policies and guidelines for specific marketable collateral types
  - Other Collateral
    - Annuities – 80%
    - Cash Surrender Value of Life Insurance – 80%

| 409 | 409 | If the loan is secured by real estate, is it in compliance with the Appraisal Policy, i.e. (Check N/A if not secured by real estate). | ☐ N/A  ☒ Yes  ☐ No |
| --- | --- | --- | --- |

- All real estate related transactions require either an appraisal or are exempt as defined by law (refer to Credit Policy Manual Section 404.2.1). Exemptions 1, 3, & 4 will require an evaluation or appraisal. Refer to Credit Policy Section 404 Credit Procedure Manual Section 0404.2 on the type of valuation or appraisal that is needed.
- The commercial appraisals and evaluations require an independent compliance review performed prior to the final approval decision and/or disbursement of funds.
- The appraisal should not be more than twelve months old. Exceptions to this must be approved by the Real Estate Division Officer or a Regional Credit Officer but should generally not be granted for appraisals or evaluations more than twenty-four months old.

17

FNB0788

| | | Is the loan in compliance with the Environmental Risk Policy, i.e. (Check N/A if not secured by real estate). | ☐N/A ☒Yes ☐No |
|---|---|---|---|
| | | For all loans secured by real estate (excluding one to four family residences that are in areas known to be free of environmental risk, an Environmental Preliminary Screening/Site evaluation has been performed to screen the property for environmental hazards and has been put in writing | |

| | | If the loan is secured by equipment, does the valuation method align with the generally accepted procedures: (Check N/A if not secured by Equipment). | ☒N/A ☐Yes ☐No |
|---|---|---|---|
| | | New Equipment – will reflect the amount of invoice less recognized dealer's invoice purchase price will reflect the value from a recognized guide. Used Equipment – the valuation will be summarized from an appraisal, or an estimate from a recognized dealer or other recognized equipment inspection, or the equipment establishes the valuation with appropriate adjustments. | |

| | | Is the term of the credit within the following policy limits? | ☒Yes ☐No |
|---|---|---|---|
| | | • Commercial Line of Credit – 1 year, renewable annually | |

FNB0789

| 404-16 | Is the Debt Service Coverage test ratio ≥ 1.2x based on the most current financial statement? | ☒ Yes ☐ No |
|---|---|---|
| 406-5-17 | Are the financial statements received by the borrower in compliance with the financial statement requirements set forth in the Credit Policy Manual? <br> - See Examples for verification: | ☒ Yes ☐ No |



| 404-17-18 | a.) If a Construction Loan, do the underwriting and documentation requirements comply with policy guidelines as described in Section 404-1, pages 1-5, of the Credit Policy Manual?  Check N/A if the loan is not a construction loan. | ☒ N/A ☐ Yes ☐ No |
|---|---|---|
| | b.) Will the Construction Loan's draw and disbursement monitoring comply with policy guidelines as described in Section 404-1, pages 6-9 of the Credit Policy Manual?  Check N/A if the loan is not a construction loan. | ☒ N/A ☐ Yes ☐ No |

19

FNB0790

<u>Exceptions to Policy/Guidelines or Compliance Tracking</u>

Complete the FNBPA Compliance Sheet (listed above) and attach it to the presentation package after the CAM or Business Loan Underwriting Information Form(if no CAM). For any questions answered (NO) list the exception # and Description on the CR-1 under Exceptions to Policy/Guidelines or Compliance Tracking as follows:

01   Out of Trade Area
02   Loan within Individual's Lending Authority
03   Spot Authority Used
04   Intentional Exception Used
05   Less than two distinct sources of repayment
06   Unsecured
07   Inability to Perfect Security Interest
08   Waive G & S of Principals
09   Secured by Undesirable Collateral
10   Advance Rate Exceeds Policy
11   Not in compliance with Appraisal Policy (i.e., Age of Appraisal exceeds policy, waive new appraisal/evaluation, etc.)
12   Not in compliance with Environmental Risk Policy
13   Not in compliance with Equipment Policy, Valuation, etc.
14   Term Exceeds Policy
15   Waive full compliance with Loan Agreement Covenants
16   Debt Service Coverage (DSC) Below Policy
17   Waive full compliance of Financial Statement Policy (i.e, stale Personal Financial Statement, waive Reviewed or Compiled Statement, waive guarantor statements, etc.)
18   Waive full compliance with Construction Loan Underwriting Policy
19   Waive full compliance with Construction Loan draw and disbursement policy.

20

**FNB0791**

## Executive Summary

Greg Eagle is requesting a $20,000,000 commercial real estate loan to pay off a $3,000,000 existing mortgage with Florida Community Bank on the property, provide supplemental financing for the purchase of a property in Charlotte County, and fund a 2-year interest reserve. The subject property consists of two contiguous parcels of land. The borrower estimates a market value of $32MM, resulting in a 62.5% LTV.

The borrower currently has a letter of intent from a prospective buyer to purchase 108 acres of the subject property for $6 per SF, or $28MM. The due diligence period under the proposed contract would probably be one year. The borrower is still negotiating the transaction but will probably pass on it unless the price is increased closer to $7 per SF.

Mr. Eagle has entered into contract as real estate trustee, to purchase 6,512 acres of real estate in Charlotte County. The total purchase price is $113MM and a non-refundable deposit of $25MM was required; Mr. Eagle providing a deposit of $9MM and investors providing an additional $16MM. Due to recent tightening in land loan financing by area banks, Mr. Eagle has had difficulty obtaining the financing to purchase the property. He recently received a 60-day extension on the contract and is diligently working with banks and private investors to consummate the transaction. Our loan would utilize his considerable equity in real estate holdings in Cape Coral to either: (1) facilitate the financing of the property or (2) finance the repayment of the other investors' deposits if the transaction falls through. Mr. Eagle is not required to refund the deposits, but feels obligated to do so. To further explain purpose #1, many banks have reduced their LTV requirements to 50% on large land loans. Our loan would effectively supplement the difference between the 50% LTV requirement and the 65% ratio the borrower originally budgeted for.

The rate will be floating at Prime plus 1.00% ADOC with a 1 bps fee. Payments will be interest only monthly paid by an interest reserve and sale of the property. Borrower cash flow will be the secondary source of repayment.

The primary source of interest repayment will be from an interest reserve. An interest reserve of $3.6MM will be sufficient to cover interest only payments of $1.8MM for 24 months. Principal repayment will be from the sale of the property with secondary from borrower cash flow.

The global cash flow demonstrates Greg Eagle's ability to service the proposed debt as well as any existing debt, including debt under Gregory W. Eagle, P.A., 5.97x in 2005. He can still cover the all debt 2.39x with a 40% reduction in cash flow, and 2.02x considering a 2.5% rise in interest rates.

| Borrower | Credit Score | Statement Date | Net Worth | Total Assets |
|----------|--------------|----------------|-----------|--------------|
| Gregory W. Eagle | 751 | 2/28/2006 | $26,509,583 | $176,473,760 |

Collateral consists of a FREM on two contiguous parcels of land along Pine Island Road in Cape Coral, FL. One parcel consists of 101.26 acres of Grazing Land Class V and the other is 20.17 acres of Vacant Industrial land, totaling 121.43 acres. The land has been approved in the Future Land Use Plan for large retail use. The 101.26-acre parcel was purchased 6/1/90 for $3,350M, and the 20.17-acre parcel was purchased on 5/1/96 for $650M, for a

4

FNB0792

total purchase price of $4MM. The borrower estimates a market value of $32MM for the subject property, yielding a total LTV of 62.5%. An appraisal evidencing a maximum LTV of 65% will be required.

**Conditions**
- Maximum loan amount will be 65% LTV.
- Verification of interest reserve on the Borrower's proposed land loan (with another financial institution) on the 6,300+/- acre property in Charlotte County.

**Strengths:**
- Global DSC of 3.12x in 2005 with 40% reduction in cash flow with a shocked DSC of 2.52x.
- Borrower estimated LTV of 62.5%; maximum appraised LTV of 65%.
- Strong borrower with over $26.5MM in liquidity, effective net worth of $176MM, and credit score of 751.
- The SW Pine Island Road corridor in Cape Coral is a desirable market area.
- Borrower is an active real estate broker with real estate expertise in the tri-county area.
- Adequate structure within policy guidelines.

**Weaknesses and Mitigating Factors:**
- Most of borrower's recurring income is from real estate transactions with very little coming from other sources, mitigated by his experience and liquidity.
- Inherent risks in real estate lending.

**Based on the Executive summary/Strengths/Weaknesses and Mitigants above a risk rating of 4 is recommended.**

FNB0793

## Core Analysis Memorandum
### Greg Eagle
#### Analyst: Michelle Sims

**I. PURPOSE**

Greg Eagle is requesting a $20,000,000 commercial real estate loan to pay off a $3,000,000 existing mortgage with Florida Community Bank on the property, provide supplemental financing for the purchase of a property in Charlotte County, and fund a 2-year interest reserve. The subject property consists of two contiguous parcels of land. The borrower estimates a market value of $32MM, resulting in a 62.5% LTV.

The borrower currently has a letter of intent from a prospective buyer to purchase 108 acres of the subject property for $6 per SF, or $28MM. The due diligence period under the proposed contract would probably be one year. The borrower is still negotiating the transaction but will probably pass on it unless the price is increased closer to $7 per SF.

Mr. Eagle has entered into contract as real estate trustee, to purchase 6,512 acres of real estate in Charlotte County. The total purchase price is $113MM and a non-refundable deposit of $25MM was required; Mr. Eagle providing a deposit of $9MM and investors providing an additional $16MM. Due to recent tightening in land loan financing by area banks, Mr. Eagle has had difficulty obtaining the financing to purchase the property. He recently received a 60-day extension on the contract and is diligently working with banks and private investors to consummate the transaction. Our loan would utilize his considerable equity in real estate holdings in Cape Coral to either: (1) facilitate the financing of the property or (2) finance the repayment of the other investors' deposits if the transaction falls through. Mr. Eagle is not required to refund the deposits, but feels obligated to do so. To further explain purpose #1, FNB originally entertained participating in a $73MM land loan with another financial institution but declined due to the size of the transaction, the long term plan of the transaction (realistically, it would be 3 years before the property would sell), and the highly speculative nature of the transaction (the property is a proposed 6500 acre residential community located in eastern Charlotte County which is fairly undeveloped).

The proposed loan is acceptable to FNB because; (1) FNB is the direct lender to the borrower and has complete control of the transaction, (2) the subject property is located within our direct market area, (3) the neighboring area of the subject property is a high growth area and in the midst of its development stage, (4 the time frame of selling the property is short term because the neighborhood is fairly developed (the borrower currently has a letter of intent offer on the subject property).

The rate will be floating at Prime plus 1% ADOC with a 1% fee. Payments will be interest only monthly paid by an interest reserve and sale of the property. Borrower cash flow will be the secondary source of repayment.

| Sources | | | Uses | | |
|---|---|---|---|---|---|
| Loan Proceeds | $20,000,000 | 100% | Provide Funds to Borrower/Purchase Land | $13,400,000 | 67% |
| | | | Pay off Commercial Mortgage | $3,000,000 | 15% |
| | | | Interest Reserve | $3,600,000 | 18% |
| TOTAL | $20,000,000 | 100% | TOTAL | $20,000,000 | 100% |

**II. COVENANTS**
- Maximum loan amount will be 65% LTV.
- Verification of interest reserve on the Borrower's proposed land loan (with another financial institution) on the 6,300+/- acre property in Charlotte County.

**III. COLLATERAL**
Collateral consists of a FREM on two contiguous parcels of land along Pine Island Road in Cape Coral, FL. One parcel consists of 101.26 acres of Grazing Land Class V and the other is 20.17 acres of Vacant Industrial land, totaling 121.43 acres. The land has been approved in the Future Land Use Plan for large retail use. The 101.26-acre parcel was purchased 6/1/90 for $3,350M, and the 20.17-acre parcel was purchased on 5/1/96 for $650M, for a total purchase price of $4MM. The borrower estimates a market value of $32MM for the subject property, yielding a total LTV of 62.5%. An appraisal evidencing a maximum LTV of 65% will be required.

1

**FNB0794**

## IV. BORROWER'S BUSINESS & MANAGEMENT

Greg Eagle is the owner and president of Eagle Realty. He is a long time real estate investor/developer in Southwest Florida. He is also a community advocate in Cape Coral. Mr. Eagle is either an individual owner or partner in approximately $344MM of real estate in Lee, Charlotte, and Collier County. He has been a major player in the development of the Pine Island Road corridor in Cape Coral and owns over 50% of the commercial real estate on Pine Island Road in Cape Coral.

He is also very involved in the local community, donating eight acres with an estimated value of $1.4MM to Grace Methodist Church in Cape Coral. He also funded approximately $900M for a youth skate park in Cape Coral.

## V. COMPETITIVE ENVIRONMENT AND INDUSTRY/MARKET ANALYSIS

Lee County is located within the Southwest Florida coastal region, approximately 125 miles south of Tampa and 145 miles northwest of Miami. Lee County is in a sub-tropical climate with an average annual temperature of 73.9 degrees Fahrenheit. The topography of Lee County is generally flat with a mean elevation of approximately 12 feet above sea level. Primary transportation to and through Lee County consists of I-75 and US 41. Primarily the result of migration, Lee County is recognized as one of the fastest growing counties in the United States. This rapid growth of population has, to a great extent, resulted from the immigration of elderly people from northern states. The school system in Lee County consists of 30 elementary schools, 11 middle schools, 7 high schools, several parochial schools, Edison Community College and Florida Gulf Coast University. The economic base of Lee County is primarily created by the construction and tourist industries. Lee County is governed by five commissioners elected to four-year terms, while the City of Fort Myers is governed by a City Council consisting of five persons as well as the mayor. With the relatively recent completion of the new regional transportation systems, the County's tourism, manufacturing and industry are expected to increase, bringing more external money into the area and giving Lee County a stronger economic base. In conclusion, Lee County can anticipate continuing economic growth.

According to an article from the Bonita-Fort Myers *News-Press* by Tim Engstrom, construction and retail jobs helped set a 30-year record for the lowest jobless rate in Lee County in April 2006, Just 2.1% of the county's workforce (about 5,700 people in a labor force of 279,000) didn't have a job in April. That is the lowest rate since the state started keeping records in 1976, according to the Florida Agency for Workforce Innovation. Lee County's rate was 3% a year ago and 2.2% last month. It has held below 2.5% since December 2005.

### Cape Coral

Cape Coral was built about 40 years ago by two land speculators who believed that the property's location on the Gulf Coast provided abundant sunshine and almost endless opportunities for waterfront living. The Rosen brothers purchased the property, platted the community and created more than 400 miles of canals. At 114 square miles, Cape Coral is the second largest city in the state of Florida. The brothers began a massive marketing campaign that resulted in the sale of nearly all of the 350,000 residential building sites, the majority to people who lived in other states.

The City, incorporated in August 1970, and its population continues to grow rapidly. With nearly 150,000 residents, Cape Coral is one of the fastest growing areas in Florida. Cape Coral is the 2nd largest city geographically in the state of Florida and is the 11th largest city in population. The City features thousands of waterfront residential properties on canals, including many with direct, saltwater access to the Gulf of Mexico and Charlotte Harbor. The supply and affordability of these waterfront sites makes Cape Coral one of the most attractive communities on the Gulf Coast. The City is a large peninsula bordered by the Caloosahatchee River on the east and Matlacha Pass on the west. It is located between Sarasota and Marco Island.

### Key Local Economic/Real Estate Statistics:

Building Permits- Lee County issued 849 single family building permits in March 2006, a 12.6 percent increase over February and 16 fewer than the same time a year ago. Cape Coral issued 525 single family home permits, up from 480 in February and down significantly from the 858 permits issued in March 2005. The value of the 849 single family homes in Lee County was $233 million. The value for Cape Coral was $56 million.

Historically, building permits remain high. For example, in Cape Coral in 2002, there were a total of 2,783 single family building permits pulled for the year, or a monthly average of 232 permits.

Labor – According to the US Bureau of Labor Statistics, the unemployment rate for Lee County in February 2006 was 2.3%.

2

FNB0795

Population Growth: In 6/2005, the US Census Bureau rated Cape Coral the 5th fastest growing city for cities with populations over 100,000. Lee County was ranked as the 22nd fastest growing county in the U.S. during the same time period.

|  | Lee County | Cape Coral |
|---|---|---|
| 2000 Census Population | 440,888 | 102,286 |
| 2004 (July) | 514,295 | 120,439 |
| 2005 estimate | 549,442 | 140,195 |

Home Prices: The median sales price for homes in Lee County has risen substantially over the past ten years as noted below:

Median Home Sales Price in Lee County:
1995 -$ 86,600
2000 -$112,300
2005 -$278,200

## Location and General Data

### Location

The subject property is located on the north side of Pine Island Road between Chiquita and Burnt Store Road is a very special holding of Mr. Eagle's since this parcel is the only one of its kind within the city with the size and location to be a reasonable site for a "destination retail commercial center" (regional mall). This is in what will be a city of 425,000 people and 115 square miles at build out (2035). The present population is in excess of 150,000 and growing at 10,000 new residents per year.

The Pine Island corridor has become the center of commercial real estate development in Cape Coral due to its location. It is the major east/west corridor in Cape Coral and the city of Cape Coral has prioritized its development. There are currently three "big box" developments in the planning stage or under construction in the area; a Wal-Mart neighborhood market, a Kohl's department store, and a Super Wal-Mart. The Super Wal-Mart is located directly across the street from the subject property and has agreed to pay for a new road that will extend along the east boundary of the property, further improving its value.

### Property Use

This site has the proper Future Land Use for this purpose (Pine Island Corridor) and will have access to two multi-lane roads when completed (Pine Island Road and Cetius Parkway). It is also adjacent to a north/south collector road (Surfside Blvd.). There is water and sewer available at the site and the city will have sufficient water and sewer capacity when they finish the next utility capital expansion project in 2008.

### Concurrency

Pine island road is a state road and the Florida Department of Transportation (FDOT) has the design/construction documents at 90% of completion. Private land owners working with the City of Cape Coral have set aside more than 65% of the needed right of way for the road. Recently, the City Council voted unanimously to direct staff to work out a plan with FDOT that would allow the city to advance fund the acquisition of the rest of the needed right of way and road construction to allow the road to be four lanes by 2010. A development group of planners, engineers, and attorneys have started the preliminary work to gain the necessary approvals from the city to develop the site as a mixed-use regional mall professional center with an associated residential component. This process should be completed with the next two years to allow for construction on the site to coincide with the improvement to Pine Island Road. Mr. Mazurkiewicz, Jr. of BJM Consulting, Inc, believes this site will become home to the destination retail commercial center to serve the shopping needs of the million people who will eventually live between the Caloosahatchee and Peace Rivers.

## VI. MARKET ANALYSIS / PROJECT PROFITABILITY

The primary source of interest repayment will be from an interest reserve. An interest reserve of $3.6MM will be sufficient to cover interest only payments of $1.8MM for 24 months. Principal repayment will be from the sale of the property with secondary from borrower cash flow.

The global cash flow that follows demonstrates Greg Eagle's ability to service the proposed debt as well as any existing debt, including debt under Gregory W. Eagle, P.A., 5.97x in 2005. He can still cover the all debt 2.39x with a 40% reduction in cash flow, and 2.02x considering a 2.5% rise in interest rates.

3

FNB0796

**Global Cash Flow ('000's)**

| | 2004 | 2005 | Proposed 2006* |
|---|---|---|---|
| Greg Eagle CFASD | 8,726 | 16,613 | 8,726 |
| Expected Sales of $27.5MM less 35% tax | | | 17,875 |
| Total CFASD | 8,726 | 16,613 | 26,601 |
| | | | |
| Proposed Debt (fully funded) | 1,800 | 1,800 | 1,800 |
| Interest on $5.8MM existing debt at 10% | 580 | 580 | 580 |
| Eagle's Personal Debt Service | 404 | 404 | 404 |
| Total Debt Service | 2,784 | 2,784 | 2,784 |
| | | | |
| Cash Flow After Debt Service | 5,942 | 13,829 | 23,817 |
| | | | |
| **Global DSC** | **3.13x** | **5.97x** | **9.55x** |
| | | | |
| CFASD Reduced by 40% | 3,490 | 6,645 | 10,640 |
| Total Debt Service | 2,784 | 2,784 | 2,784 |
| **Global DSC w/ CFASD Reduced by 40%** | **1.25x** | **2.39x** | **3.82x** |
| | | | |
| Shock Test - Subject Debt + 2.5% ($20MM x 11.5%, fully funded) | 1.06x | 2.02x | 3.24x |

*2004 cash flow is used in the proposed 2006 cash flow to be conservative.

## VII. BORROWER FINANCIAL ANALYSIS

Greg Eagle's financials are summarized in the following chart and detailed in the paragraphs that follow.

| Name | Credit Score | Statement Date | Net Worth | Total Assets |
|---|---|---|---|---|
| Gregory W. Eagle | 751 | 2/28/2006 | $26,509,583 | $176,473,760 |

**Gregory W. Eagle** provided an individual PFS dated 2/28/06 reflecting $26,510M in cash, $118,687M interest in land trusts, $16,612M in land holdings under Gregory W. Eagle, P.A., and $3,815M in mortgages receivable to Gregory W. Eagle, P.A. Liabilities were comprised solely of mortgages as follows: $6,018M by Greg & Cathy Eagle, $20,515M in land trusts under Greg W. Eagle, P.A., and $6,988M in land holdings under Greg W. Eagle P.A., yielding an effective net worth of $176,474M. Statements from two different checking accounts at Riverside Bank dated 2/28/06 are on file accounting for $10,209,583 of his liquidity. A summary of his direct and indirect liabilities follow:

**Direct Liabilities**
Greg and Cathy Eagle
Land Holdings as of 2/28/06

(000's)

| Property | Est Value | Mtg |
|---|---|---|
| 4235 SE 20th Pl-A501 (Riverfront Cape Coral Condo) | $2,500M | $1,600M |
| 4235 SE 20th Pl-A505 (Riverfront Cape Coral Condo) | $2,500M | $1,591M |
| 4235 SE 20th Pl-C105 (Riverfront Cape Coral Condo) | $ 800M | $ 360M |
| 4235 SE 20th Pl-A503 (Riverfront Cape Coral Condo) | $1,900M | $ 622M |
| 4235 SE 20th Pl-A402 (Riverfront Cape Coral Condo) | $1,900M | $1,250M |
| 1765 CC Parkway- Clipper Bay Condo | $ 500M | $ -0- |
| 4134 Brindale Dr (SFR- North Fort Myers) | $2,000M | $ 600M |
| Useppa Island Waterfront Home | $2,500M | $ -0- |
| Lodge-Brimley, MI | $1,000M | $ -0- |
| 4235 SE20th Pl (Other) | $ 500M | $ -0- |
| 4235 SE 20th Pl- Boat Slip | $ 200M | $ -0- |
| | | |
| Totals | $16,300M | $6,017M |

4

**FNB0797**

Contingent/Indirect Liabilities Summary
Greg Eagle P.A.
Land Trust Interests as of 2/28/06

15 Land Trusts
Aggregate Land Trust Values= $264MM
Aggregate Debt of Land Trusts= $45MM

Key Notes:

1. Indian Oaks and Hancock Creek Property- Value= $90MM Debt= $33MM
Under contract for $90MM in three separate transactions to close this year.
*Greg Eagle will personally net $25MM before taxes.

2. Bonita 55 Pthsp - Value = $8.7MM Debt= $2.4MM
* Greg Eagle will personally net $2.5MM before taxes.

---

Greg Eagle PA
Land Holdings as of 2/28/06

25 Land Holdings
Aggregate Land Values= $64.6MM
Aggregate Debt= $7MM

Key Notes:
1. Tropical Farms (25 acres) Value= $5MM Debt= $1.3MM SOLD APRIL 2006
2. 2827/2903 PI Road (10 acres) - Value = $3.9MM Debt= -0- UNDER CONTRACT

Summary
Aggregate Contingent Asset Value= $329MM
Aggregate Contingent Liabilities= $51MM
Contingent Liabilities under contract in 2006= $35MM

Tax returns were provided for 2004 and 2005 reflecting a primary source of cash flow from distributions both years of $9,448M and $15,551M, respectively (see charts that follow for details). Business income offered additional support of $287M in 2004, and capital gains of $419M supported the distributions in 2005. Other income included interest and dividends, Eagle Realty, Greg W. Eagle, P.A., and two installment sales, leaving cash flow of $16,613M in 2005. Excess cash flow was $6,313M after accounting for personal expenses of 40% and personal debt service of $332M.

A credit bureau report dated 4/21/06 reflected a credit score of 751. Eagle had one 30-day with Key Bank on a recreational loan on 5/04; the loan is currently paid off.

5

FNB0798

Greg Eagle's land trust activity consisting of his distributions and contributions for 2005 and 2004 are below:

| 2005 Entity | Distributions | Contributions |
|---|---|---|
| Charlotte County Land Trust 10 | $635,811 | |
| Charlotte County Land Trust 46 | $804,163 | |
| Kelly Road 20 Land Trust | $827,193 | |
| Land Trust Bayshore I-75 | $2,216,819 | |
| Land Trust Burnt Store Rd RV 98 | $297,458 | |
| Land Trust Colonial I-75 | $528,714 | |
| Land Trust Del Prado Extension 54.54 | $55,908 | |
| Land Trust Naples 58.5 CR 951 | $29,220 | |
| Land Trust Naples 67.0 CR 951 | $18,294 | |
| Land Trust Naples 99.0 CR 951 | $224,283 | |
| Land Trust Pine Island Road 57.43 | $268,119 | |
| Land Trust Saddlewood Farms 10.38 | $1,052,698 | |
| Land Trust San Carlos 14.72 | $585,601 | |
| South Gulf Cove Land Trust | $7,993,792 | |
| Lee County Land Trust 20 | $12,546 | |
| **Totals** | **$15,550,619** | **$0** |

| 2004 Entity | Distributions | Contributions |
|---|---|---|
| Land Trust Burnt Store Rd RV 98 | $1,050,714 | |
| Land Trust Colonial I-75 | $43,252 | |
| Land Trust Naples 58.5 CR 951 | $29,320 | |
| Land Trust Naples 67.0 CR 951 | $18,396 | |
| Land Trust Naples 99.0 CR 951 | $619,199 | |
| Land Trust Pine Island Road 2.6 | $97,781 | |
| South Gulf Cove Land Trust | $6,245,210 | |
| Telegraph Creek Land Trust | $1,302,334 | |
| Lee County Land Trust 20 | $41,631 | |
| Charlotte County Land Trust 100 | | $365 |
| Charlotte County Land Trust 46 | | $83,951 |
| Charlotte County Land Trust 48 | | $32,698 |
| Indian Oaks & Hancock Creek Land Trust | | $705,318 |
| Kelly Road 20 Land Trust | | $975 |
| Land Trust Bayshore I-75 | | $163,184 |
| Land Trust Bonita 55 | | $21,324 |
| Land Trust Colonial I-75 | | $3,779 |
| Land Trust Del Prado Extension 54.54 | | $370 |
| Land Trust N US 41 5.24 | | $2,768 |
| Land Trust Pine Island Road 29 | | $7,107 |
| Land Trust Pine Island Road 10.121 | | $7,882 |
| Land Trust Pine Island Road Center 10 | | $5,753 |
| Land Trust Pine Island Road Center 15 | | $46,282 |
| Land Trust Pine Island Road Center 5 | | $2,924 |
| Land Trust Punta Gorda 67.24 | | $155 |
| Land Trust Saddlewood Farms 10.38 | | $1,350 |
| Land Trust San Carlos 14.72 | | $8,986 |
| Pine Island Land Trust 101 | | $8,986 |
| Rotunda Lakes 81.5 Land Trust | | $35,687 |
| **Totals** | **$9,447,837** | **$1,139,844** |

6

FNB0799

Mr. Eagle is 35% owner in South Gulf Cove which is an entity which purchased residential property in Charlotte County for $24MM a few years ago. Portions of the property have sold over the last two years for approximately $50MM. It still has approximately $50MM left to sell, and the property is now debt free. Mr. Eagle's pro-rata share of the $50MM is $17.5MM.

## VIII. INSURANCE
Flood and environmental determinations are required.

## IX. RISK-- LRR 4
I recommend the risk rating(s) above and I do _____ do not _____ certify that all documentation and conditions of approval of existing loans have been reviewed by me. All are complete, correct and in compliance unless noted above.

Mike Kozak (via email)          Date: _6-14-06_____
Loan Officer Signature

7

**FNB0800**



20.17 Parcel



101.26 Parcel



Photo of 101.26 Parcel

FNB0801



9

FNB0802



# The Cape Coral 123-ac. Power Center Commercial Site

Cape Coral's Only Regional Retail Commercial Development Site - Uniquely Positioned To Provide Retail Goods For The Nations 9th Fastest Growing City

Eagle Realty

The 123-ac. Commercial Center — with Direct Access To Pine Island Rd., SW 4th St, & El Dorado Blvd.

## The Eagle Realty 123-ac. Power Center Site

- Pine Island Road District Commercial & Mixed Use Zoning With 3 Public Roads Site Access
- Pine Island Road Programmed and Funded For 4-lane Improvement
- Due To City Platted Character There Are No Competitive Alternative Large Cape Coral Commercial Sites
- With 266E New Households Per Year Cape Coral Has Projected 3,000,000 SF Commercial Space Demand By 2010

Price & terms, please call Greg Eagle or Greg Stuart (239) 542-2333 (800) 741-9925

10

4384453



**SIGNED**
**ORIGINAL**

Commercial Loan Approval Document
First National Bank of Pennsylvania

| | | | |
|---|---|---|---|
| Borrower's Legal Name | Gregory W Eagle, Personally | DI ☐ DII ☐ DIII ☐ | (Member Spd Author) |
| | Gregory W Eagle, Trustee | Date | 07/17/06 |
| Borrower's Address | 3818 Del Prado Blvd | | |
| | Cape Coral, FL 33904 | Lender | Mike Kozak |
| Legal Entity | Individual | Officer # / Region # | 1479 / 3290 |
| Nature of Bus/NAICS | Land Development / 236110 | Borrower's Tin # | |
| Parent/Affiliation | N/A | | |
| Subject to Reg O | Yes ☐   No ☑ | Gross Annual Income | $16,613   M |
| Customer Since | New | Credit Analyst | Michelle Sims |
| New Customer | Yes ☐   No ☑ | Total Existing Exposure | $0   M |
| (If yes, OFAC check | | Total Proposed Exposure | $20,000   M |
| completed) | Yes ☐   No ☑ | Total Proposed Exposure | |
| Shared National Credit | Yes ☐   No ☑ | for Ind/Dual Lending | |
| | | Authority Purposes | $0   M |

| | | | | | |
|---|---|---|---|---|---|
| I  New Loan | Renewal | Change | Letter of | | |
| • Amount | $17,030,000 | Provision  X | Review ___ | Credit ___ | Derivative ___ |
| • Derivative CER | No | | | | CRA Ident  Code   5, 8 |
| • Purpose | Amend the purpose of the loan proceeds  Refer to attached memo | | | | Purpose Code   190 |
| | | | | | Occupied Code   N |
| • Rate/Fees | Prime + 1 00% / 1% fee | | | | |
| • Repayment Terms | 24 months, Interest only with 6-month advance period | | | | Property Type Code   7 |
| | | | | | MRE Code |

| | | | | | |
|---|---|---|---|---|---|
| • • Commitment Expiration | 30 days | Maturity   24 months | Review/Renewal | 06/30/07 |
| • • Primary Source of Repayment Funds | Interest Reserve/Sale of Property, Secondary  Borrower Cash Flow | | | |
| • • If LOC | High | Low | Avg Bal/Curr Yr | Avg Bal/Lst Yr |
| Line Cleared | Yes ☐ | No ☐ | How Long | |

- Collateral Description   FREM on 126 77 acres of commercial property located on SW Pine Island Rd, Cape Coral, FL
  An appraisal prepared by Michael Hurst & Associates provided an appraised value of
  $26,230M as of 6/8/06, providing an LTV of 65%

| (000's) Collateral | Lien Position | Gross Value | Basis of Gross Value | LTV % | Net Realizable Value |
|---|---|---|---|---|---|
| A/R | | $0 | | | $0 |
| Inventory | | $0 | | | $0 |
| FF&E | | $0 | | | $0 |
| Real Estate | FREM | $26 230,000 | Estimated Value | 65% | $17,030,000 |
| Other | | $0 | | | $0 |
| Other | | $0 | | | $0 |
| | | | | Total | $17,030,000 |

| | | | | |
|---|---|---|---|---|
| Collateral Subject to Other Liens? | Yes ___   No  X | | Less  Other Liens | |
| Is Insurance Coverage Current? | Yes  X   No ___ | | Less  Loan Amount | ($17 030,000) |
| Date of Last Transaction Search | | | Excess / (Shortfall) | $0 |
| | | | Derivative CER | |
| Appraisal   X | Evaluation ___ | Updated Appraisal ___   On ___ | By | |
| Environmental | Phase I   X | Phase II ___   Phase III ___ | Environmental Checklist | |
| Borrower's Attorney | | Flood Insurance Verification   Yes ___ | No   N/A |
| Commitment Letter | Yes  X   No ___ | Title Insurance   Yes  X | No ___ |

| (000's) Guarantor Name(s) | Stmt Date | Liquid Assets | Real Estate Equity | Total Assets | Total Liab. | Net Worth | Annual Income |
|---|---|---|---|---|---|---|---|
| Greg Eagle (Borrower) | 02/28/06 | $26,510 | $183,300 | $209,809 | $33,336 | $176,473 | $16,613 |

**FNB0804**

| | | | |
|---|---|---|---|
| Borrower's Legal Name | Gregory W Eagle, Personally | Date | 07/17/06 |
| Borrower's Address | 3818 Del Prado Blvd | Lender | Mike Kozak |
| | | Officer # / Region # | 1479 / 3290 |
| Legal Entity | Individual | Borrower's Tin # | |
| Nature of Bus/NAICS | Land Development / 236110 | | |
| Parent/Affiliation | N/A | Gross Annual Income | $16,613   M |
| Subject to Reg O | Yes ☐   No ☑ | Credit Analyst | Michelle Sims |
| Customer Since | New | Total Existing Exposure | $0   M |
| New Customer | Yes ☑   No ☐ | Total Proposed Exposure | $20,000   M |
| (If yes, OFAC check completed) | | Total Proposed Exposure for Ind/Dual Lending | |
| Shared National Credit | Yes ☑   No ☐ | Authority Purposes | $0   M |
| | Yes ☐   No ☑ | | |

- **Covenants**                    <u>Test Required</u>    Frequency (M.O.A)                    <u>Compliance</u>                    <u>Comments</u>
  1) Maximum loan amount will be 65% LTV
  2) Verification of interest reserve on the Borrower's proposed land loan (with another financial institution) on the 6,300 +/- acre property in Charlotte County

- **Prepayment Fee**          Yes _____   No ___X___          _____ %

- **Annual Financials (B/G)**   Audit _____   Review _____   Compile _____   Unaudited _____   PFS __B__   TR __B__
- **Interim Financials (B/G)**   Quarterly _____   Monthly _____
- **A/Rec Agings**   Quarterly _____   Monthly _____   Other _____
- **A/Pay Agings**   Quarterly _____   Monthly _____   Other _____

- **Exceptions to Policy/Guidelines or Compliance Tracking**
  Exception/Compliance # ___14___   Exception/Compliance Description _Term on land loan exceeds 12 months_
  Exception/Compliance # _____   Exception/Compliance Description _____
  Exception/Compliance # _____   Exception/Compliance Description _____
  Exception/Compliance # _____   Exception/Compliance Description _____
  Exception/Compliance # _____   Exception/Compliance Description _____

- **Banking Relationship**   None
  - Checking   Current _____   Avg 2Mo _____
  - Overdrafts   Last Year _____   Avg YTD _____   Avg 2Yr _____
  - Delinquency   _____ x 30 Days   Current YTD _____
  - Other Banking Relationships   _____ x 60 Days   _____ x 90 Days

- **Proposed Loan Risk Rating** ___4___
- **Additional Conditions (For Approvers Use Only)**   Expiration Date ___06/30/07___

| Action Taken | ✓ Senior Loan Committee | ✓ Board Loan Committee | Board of Directors |
|---|---|---|---|
| Approval ___X___ | | | |
| Decline _____ | JH 7/19/06 | 7-20 06 | |
| Cancel _____ | Initial & Date | Initial & Date | Initial & Date |
| Table _____ | | | |

_Mike Kozak (Via email) 7-17-06_
(Originating Officer-Name/Signature)                     Date

_____                    _____
(Dual III-Sr Lending Officer or President-Name/Signature)   Date

_____                    _____
(Approving Officer/First Signer-Name/Signature)   Date              (Dual III-Chief Credit Officer or Designee-Name/Signature)   Date

_____
(Dual Signature-Second Signer-Name/Signature)   Date

2

FNB0805

**MEMO**

If you will recall, Mr Eagle's much talked about land purchase in Charlotte/DeSoto County consisted of two transactions on contiguous parcels  There was a front parcel of 1248 acres with a sales contract of $23 5MM and a back parcel of 5000+ acres with a sales contract of $90MM  At the last minute, Greg Eagle decided to walk away from the $90MM land purchase but he did fund the $3 5MM deposit on the front tract with our loan proceeds  That closing date for this parcel is in August  The original purpose of our loan was to supplement the financing of the $113MM purchase in Charlotte/DeSoto County -or- finance the repayment of $16MM in deposits to investors since the initial $25MM deposit was non-refundable  To date, our loan has paid off $3MM of existing mortgages on our collateral, funded a $3 3MM interest reserve, and financed the $3 5MM deposit referenced above  There is approximately $7MM remaining on the LOC

In, lieu of paying back the investors with cash, Mr Eagle has agreed to give the investors ownership interests in other projects of his, including the $23 5MM transaction set to close in August  Thus, he would now like to use the remaining proceeds from our loan (approximately $7MM) to finance another investment  He closed last week on a 50% ownership interest in a $190MM dockominium / marina project  His initial capital investment requirement was $9MM  He borrowed $6 2MM from a friend which he would prefer to pay back with our loan

I have outlined below the upcoming transactions that Mr. Eagle is involved with and that require cash outlays on his part

Tennessee Land Purchase- This is a $40MM purchase price that was supposed to close next month  Survey and title issues have postponed this and Mr Eagle does not expect this transaction to occur  Anticipated cash outlays= None + refund of $2MM deposit

Marina (Dockominium) Facility- Mr Eagle provided $9MM in equity last week to become a 50 percent  investor in this project  This project is a dockominium construction project relating to marinas in Tampa, Naples, and Key West  The project is managed by Steve Knight, owner of Sanibel Harbor Marina with extensive expertise in this area  Mr Knight is modeling his projects after the Sanibel Marina project where he has sold 301 slips for $42MM over the past two years  His total estimated profit in this marina is projected to be $33MM

Wachovia Bank has provided the financing on this project and according to Mr Eagle, the loan finances all carrying costs while the dockominiums are built and/or converted to condominium titling  There are no further investor cash outlays required  Further Anticipated cash outlays= None

CR 74 1248 Ranch Property- Frontage property (1248 acres) of previously discussed Charlotte/DeSoto Counties project  We financed a $3 5MM deposit last week and Mr

3

**FNB0806**

Eagle previously paid a $1 5MM deposit   I am awaiting word on the financing plan
Anticipated cash outlays= Unknown

Mr. Eagle acknowledged that after the above projects definitely "fill his plate for the
foreseeable future"   He does not anticipate any involvement in additional real estate
projects for quite some time

Finally, I have outlined below Mr  Eagle's upcoming real estate transactions

Upcoming Land Sales and Estimated Net Proceeds to Mr. Eagle:

| Date | Related Entity | Sale Amt | Eagle Equity |
|------|----------------|----------|--------------|
| 10/31/06 | South Gulf Cove | $14 4MM | $3MM |
| 1/13/07 | Hendry Cty River Ranch 508 | $6 2MM | $2 1MM |
| 9/30/06 | Hancock Creek Commerce Pk | $9MM | $2 3MM |
| 10/12/06 | Hancock Creek Commerce | $29 5MM | $8 3MM |

Lets discuss when you have time   Thanks

4

FNB0807

**Commercial Loan Approval Document**
First National Bank of Pennsylvania

| | | | | | | SIGNED ORIGINAL |
|---|---|---|---|---|---|---|

DI ☐   DII ☐   DIII ☐   NMC ☐   Spot Authority ☐
Date                                                    06/30/08

| | | |
|---|---|---|
| Borrower's Legal Name | Pine Island 101 Land Trust and | |
| | Gregory W Eagle, Individually | |
| Borrower's Address | 3818 Del Prado Blvd | Lender                  Mike Kozak |
| | Cape Coral, FL 33904 | Officer # / Region #    1479 / 3293 |
| Legal Entity | Individual | Borrower's Tin #  ████████ |
| Nature of Bus/NAICS | Land Development / 236110 | |
| Parent/Affiliation | N/A | Gross Annual Income           $1,675   M |
| Subject to Reg O | ☐   No ☑ | Credit Analyst           Michelle Sims |
| Customer Since | 2005 | Total Existing Exposure   $17,030   M |
| New Customer | Yes☐   No ☑ | Total Proposed Exposure   $17,030   M |
| (If yes, OFAC check completed) | Yes☐   No☐ | Total Proposed Exposure for Ind/Dual Lending |
| Shared National Credit | Yes☐   No☐ | Authority Purposes           $0   M |

| | | | | | |
|---|---|---|---|---|---|
| New Loan | Renewal ____ X ____ | Provision | Review ____ X ____ | Letter of Credit | Derivative |

| | | |
|---|---|---|
| • Amount | $17,030,000 | CRA Ident Code   5, 8 |
| • Derivative CER | No | Purpose Code   190 |
| • Purpose | 1  Extend existing note for 6 months to allow additional time to sell collateral (subject to new conditions) | Occupied Code   N |
| | 2  If necessary, extend loan for 30 days without new conditions | |
| • Rate/Fees | Prime + 1% | Property Type Code   7 |
| • Repayment Terms | Monthly interest-only payments for 6-month term | MRE Code |
| • • Commitment Expiration | 30 days   Maturity   12/30/08   Review/Renewal   12/30/08 | |
| • • Primary Source of Repayment Funds | Interest Reserve / Sale of Property | |
| • • Secondary Source of Repayment Funds | Borrower Cash Flow | |
| • • Tertiary Source of Repayment Funds | Liquidation of Collateral | |
| • • If LOC   High | Low         Avg Bal/Curr Yr | Avg Bal/Lst Yr |
| Line Cleared   Yes☐ | No☐   How Long | |

• Collateral Description    FREM on two contiguous parcels located on 2400 block SW Pine Island Rd, Cape Coral, FL
1951 SE 35th Street, Cape Coral, FL, and 1765 Cape Coral Parkway, Unit 216, Cape Coral, FL

| (000's) Collateral | Lien Position | Gross Value | Basis of Gross Value | LTV % | Net Realizable Value |
|---|---|---|---|---|---|
| A/R | | $0 | | | $0 |
| Inventory | | $0 | | | $0 |
| FF&B | | $0 | | | $0 |
| 2400 Blk SW P I Rd | FREM | $33,800 | Appraisal dated 11/26/07 | 65% | $21,970 |
| 1951 SE 35th St | FREM | $652 | Lender Opinion - Apprsl Pending | 65% | $424 |
| 1765 Cape Coral Pkwy | FREM | $262 | Lender Opinion - Apprsl Pending | 65% | $170 |
| | | | | Total | $22,564 |

| | | | | |
|---|---|---|---|---|
| Collateral Subject to Other Liens? | Yes _____ | No ____ X ____ | Less  Other Liens | |
| Is Insurance Coverage Current? N/A | Yes _____ | No _____ | Less  Loan Amount | ($17,030) |
| ~~Date of Last Transaction Search~~ | | | ~~Excess / (Shortfall)~~ | ~~$5,534~~ |
| | | | Derivative CER | |

| | | | | | |
|---|---|---|---|---|---|
| Appraisal | Evaluation _____ | Updated Appraisal ____ X ____ | On   11/26/07 | By   Integra Realty Res | |
| Environmental | Phase I _____ | Phase II ____ X ____   Phase III _____ | | Environmental Checklist | No _____ |
| Borrower's Attorney | | Flood Insurance Verification | Yes ____ X ____ | No _____ | |
| Commitment Letter | Yes ____ X ____   No _____ | Title Insurance | Yes ____ X ____ | No _____ | |

| (000's) Guarantor Name(s) | Stmt Date | Liquid Assets | Real Estate Equity | Total Assets | Total Liab | Net Worth | Annual Income |
|---|---|---|---|---|---|---|---|
| Gregory W Eagle (Borrower) | 02/28/08 | $74 | $17,485 | $17,559 | $6,237 | $11,322 | ($125) |
| | | | | | | | (due to contributions) |

1

FNB0808

| | | | |
|---|---|---|---|
| Borrower's Legal Name | Gregory W Eagle, Personally<br>Gregory W Eagle, Trustee | Date | 06/30/08 |
| Borrower's Address | 3818 Del Prado Blvd<br>Cape Coral, FL 33904 | Lender | Mike Kozak |
| Legal Entity | Individual | Officer # / Region # | 1479 / 3293 |
| | | Borrower's Tin # | |
| Nature of Bus/NAICS | Land Development / 236110 | | |
| Parent/Affiliation | N/A | Gross Annual Income | $1,675   M |
| Subject to Reg O | Yes ☐   No ☑ | Credit Analyst | Michelle Sims |
| Customer Since | 2006 | Total Existing Exposure | $17,030   M |
| New Customer | Yes ☐   No ☑ | Total Proposed Exposure | $17,030   M |
| (If yes, OFAC check | | Total Proposed Exposure | |
| completed) | Yes ☐   No ☐ | for Ind/Dual Lending | |
| Shared National Credit | Yes ☐   No ☑ | Authority Purposes | $0   M |

- **Covenants**                    Test Required    Frequency (M.O.A)              Compliance                   Comments
- New  Additonal collateral to be provided by Mr Eagle as noted in the attached memo
- New  Mr Eagle to add $100M to existing reserve account

- **Prepayment Fee**           Yes_____    No___X___              _____%

- Annual Financials (B/G)    Audit _B_ Review_____  Compile_____  Unaudited_____  PFS _G_  TR _B, G_
- Interim Financials (B/G)    Quarterly_____      Monthly_____
- A/Rec Agings                   Quarterly_____      Monthly_____          Other_____
- A/Pay Agings                   Quarterly_____      Monthly_____          Other_____

- Banking Relationship
  - Checking          Current_____          Avg 2Mo_____          Avg YTD_____          Avg 2Yr_____
  - Overdrafts         Last Year_____                          Current YTD_____
  - Delinquency      x 30 Days_____                       x 60 Days_____                       x 90 Days_____
  - Other Banking Relationships

- Proposed Loan Risk Rating              7                  Expiration Date      12/30/08
- Additional Conditions (For Approvers Use Only)  *lender to add comments to write-up justifying*
  *a 7 month old appraisal* (8)

| Action Taken | ✓ Senior Loan Committee | Board Loan Committee | Board of Directors |
|---|---|---|---|
| Approval | ✓ | | |
| Decline | | | |
| Cancel | _7-16-08_ | _7-17-08_ | |
| Table | Initial & Date | Initial & Date | Initial & Date |

☐ I/We certify that this CR-1 and the attached Exposure Summary Report, Core Analysis Memorandum and Loan Compliance Checklist are complete and accurate to the best of my knowledge

_Mike Kozak (via email)  6-30-08_
(Originating Officer-Name/Signature)          Date                          (Dual III-Sr Lending Officer or President-Name/Signature)          Date

_____                                    _____
(Approving Officer/First Signer-Name/Signature)  Date          (Dual III-Chief Credit Officer or Designee Name/Signature)          Date

_____
(Dual Signature-Second Signer-Name/Signature)  Date

**FNB0809**

EXPOSURE SUMMARY REPORT

BORROWER- Gregory W Eagle
DATE PREPARED June 27, 2008

**A. Subject to Lending Limit**

| Borrower Account# | FNB Ent | Loan Type | Org Date | Original Purpose | Interest Rate | Original Amount | Total Commit Amount | Unsecured Commit Amount | Current Balance | Payment Amount | Collateral Type | Mat Date | Loan Risk Rtg | LRR Exp Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 43844530 | FNB | Coml RE Var | 6/30/06 | Land purchase | Prime + 1% | $17,030,000 | $17,030,000 | $0 | $17,030,000 I/O | | unimproved land/agn acres | 6/30/08 | 7 | 06/30/09 |

Total Exposure Subject to Lending Limit $17,030,000 $17,030,000 $0 $17,030,000

**Exempt Loans**

**B. Net Subject to Lending Limit**

| Borrower Account# | FNB Ent | Loan Type | Org Date | Original Purpose | Interest Rate | Original Amount | Total Commit Amount | Unsecured Commit Amount | Current Balance | Payment Amount | Collateral Type | Mat Date | Loan Risk Rtg | LRR Exp Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | $0 | $0 | $0 | $0 | | | | | |

Total Exposure Not Subject to Lending Limit $0 $0 $0 $0

**C. Aggregate Exposures Calculations**

Total Existing Aggregate Exposure $17,030,000

Plus New/Unallocated Loans

Less Refinanced Loans # $0

Total Proposed Aggregate Exposure $17,030,000

For Lending Authority Purposes $0

Less Exempt Loans $0

Total Proposed Aggregate Exposure for Individual/Total Lending Auth Purposes $17,030,000

ACH Exposure Limit# $ Credit Origination $ Debit Origination $
(if Applicable)

_Mike Kozak (Mike Kozak)_
Account Officer Signature

**FNB0810**

**MEMO**

To:          **Senior Loan Committee**

From:        **Michael Kozak**

Date:        **July 10, 2008**

Subject:     **Loan Extension for Greg Eagle**

## Background of Transaction

The subject loan ($17,030,000 commercial mortgage loan) was originally made in June 2006. The original purpose was for Mr. Eagle to use the funds to facilitate an exit strategy of a large real estate venture in east Charlotte County. Since then, Mr Eagle reversed his strategy and continued to pursue the real estate venture and related financing with BVMC, a private financing entity. This plan has ultimately placed Mr Eagle in a difficult financial position. He has spent over $20MM pursuing this revised plan and, very likely, will have nothing to show for it. At the same time, the real estate market downturn has drastically affected his real estate business. Mr. Eagle specializes in selling vacant land and there is currently minimal demand for vacant land. Additionally, Mr. Eagle's business has a heavy concentration of land loan receivables which are now delinquent because they are primarily due from other real estate investors who are also experiencing financial difficulties.

The subject loan matured on June 30, 2008. Over the last six months, the exit strategy has changed numerous times. In March, Mr. Eagle provided the bank with a contract with a local real estate investor to sell the property for $24MM. Since that time, the prospective buyer decided not to buy the property. Mr Eagle has now shifted his efforts to working with OPUS, a national developer, on a joint venture to develop the property. In addition, Mr Eagle still continues to pursue the previously discussed real estate transaction. In theory, the proposed financing with BVMC would provide cash out to Mr Eagle of $8MM+ which Mr. Eagle has stated that he would use to pay down our loan. Based on the history of this transaction, the prospect of this occurring appears remote.

Thus, our current exit strategy will now shift to Mr Eagle being able to carry our debt load until he can arrange a sale or joint venture on the subject property. I have attached a letter from OPUS indicating their interest in a joint venture in the subject property.

## Collateral Update:

A recent appraisal was requested and received by FNB on November 26, 2007. The appraisal was prepared by Integra Appraisers and provided an estimated market value of $33.8MM.

**FNB0811**

Recent events affecting value: When this loan was originally made, this section of Pine Island Road was required to be widened prior to any future development. The various land owners of the area were planning on providing a private/public funding mechanism between them and the City of Cape Coral. Due to recent budget cuts at the city and the weakened financial status of the land owners, this plan never occurred. Without this public/private venture, the road will not be widened by the state until 2014 The stretch of road proposed to be widened to four lanes is between Burnt Store Road and Chiquita Boulevard. That area is crucial, officials and developers say, for commercial development, including a possible regional mall, and because it is a key hurricane evacuation route for Pine Island residents It is also the only portion of the road that isn't four lanes

A recent change in state funding would have paved the way for the widening of Pine Island Road years ahead of schedule A transportation bill was proposed to Governor Crist that would have adjusted a local government reimbursement plan and allowed Cape Coral officials to front costs for widening State Road 78 Subsequently, the state Department of Transportation would reimburse costs in 2014, the scheduled funding date for widening

Last week, the bill was vetoed by Governor Crist. While he apparently supported this project, he vetoed the bill because of other projects wrapped into the bill. The bill will need to wait another year before it is re-submitted.

Mr. Eagle has employed a consulting firm to continue to work with political officials to (speed up) this road widening process. Based on conversations with the consultant, it appears very likely that this will get approved next year The improved timeline of the road widening would ultimately add value to the subject property.

## Updates to EVMC financing:

On June 4, 2008, Mr. Eagle's attorney, Greg Truxton, provided a much more comprehensive overview of the previously discussed real estate transaction that EVMC is proposing to finance and provide cash out to Mr Eagle We have been provided with a business plan and a risk-assessment overview prepared by Ernst and Young Mr Truxton has met with EVMC in their Los Angeles offices and he has received a drafted updated commitment letter for the loan transaction. He needs to have a few revisions made and he will provide FNB with a copy He expected to have the final revised copy by June 23rd

According to the borrower, the transaction has been delayed for two reasons; (1) because on of his original partners became uncooperative and had to be bought out of the transaction and (2) the location of the project was changed from Charlotte County to Highlands County. The uncooperative partner has now been bought out of the partnership The reason for the change in the real estate location stems from the statewide real estate slowdown Mr Eagle was able to find a much better and much

cheaper parcel of land in Highlands County for the project. Unfortunately, they have to go through a zoning change process that will take some time

Mr. Truxton still is confident that the transaction could close sometime between September 08 and January 09  One of the keys to the transaction will be receiving land zoning approval since the use of the property as a Homeland Security training facility is a special use category  He anticipates a 3 to 6 month time frame for the approval process  Realistically, the process will take 6 to 9 months.

To date, no revised commitment letter has been received  It appears safe to presume that this transaction will not happen for quite some time, if at all

## Current Proposal for Extension

There is currently $434M in the interest escrow account. Mr. Eagle is attempting to sell various assets in order to raise cash and buy time in order to sell the subject property and maximize his equity potential. He recently discounted a $1MM note receivable and received $250M  He used this cash to pay the past due real estate taxes as required by FNB  He also has a residential condo under contract for $250M which will provide additional cash if the sale closes  He has other assets that he will attempt to sell in the future.

I am proposing that the bank extend the subject loan for six months and allow Mr Eagle to utilize the funds in the interest escrow account  In exchange, Mr Eagle will

(A)  Allow the bank to lien the following properties
1  1951 SE 35th Street, Cape Coral- This is a 3,065 SF single family residence with a pool located on a saltwater canal with direct access to the river, within minutes  The house received major renovations after Hurricane Charlie in 2005.  Tax assessed value= $652M (Purchased for $725M in 8/2004)

2  1765 Cape Coral Parkway, Unit 216, Cape Coral- 1324 SF condo adjacent to the Caloosahatchee River  Tax assessed value= $291M (Purchased for $460M in 8/2005)

(B) Provide supplemental funds necessary to increase the interest reserve account sufficient for 6 monthly payments-  $100M

## Request:

1) Six-month loan extension with the above conditions.

2) Short term 30-day renewal, if necessary (without new conditions).

**FNB0813**